The ChieF Justice
delivered the opinion of the court.
The relators move to quash each and every of the several paragraphs of the return to the alternative writ of mandamus, except so much thereof as takes issue upon the allegations in the writ, to-wit: that the relators furnished to the assessor and to the County Commissioners the "itemized estimate” of moneys required to be raised by county tax for the support of the common schools for the current year, within the time required by law.
It is not found, upon examination of the remaining several paragraphs, taken separately or collectively, that the respondents show that they have directed the levy of a sum required to be raised by county tax sufficient to maintain the common schools of the county for the year, as shown by the itemized estimate made by the Board of Public Instruction and delivered to them before the tax rolls had been delivered to the collector. That the estimate was so delivered and brought to their attention, is expressly admitted in their return.
The relators give a copy of the itemized estimate furnished to the assessor and also to the respondents, 4s the relators allege, and the respondents also exhibit a copy of it, as furnished to them before the issuing of the tax roll and warrant for collection.
This itemized estimate reads thus:
"Itemized estimate of funds necessary for school operations in Gadsden county, for the year beginning October "1, T879, and ending September 30, 1880.
"Money due teachers . $1,895.22
"For rent or construction of school-houses. 15.00
“For repair of school-houses . 10.00
"For salary of Superintendent of Schools. 500.00
"For compensation of Treas. of Board of P. 1. 100.00
"For salaries of teachers (3 months school in each locality) aggregating . 2,376.00
Total.$4,896.22”
The form used purports to have been prepared by the State Superintendent. This estimate shows merely the estimated expenditures. The County Board of Instruction should give in their statement, for the information of the Count}' Commissioners, an estimate of the revenue derivable from the income of the State School Fund, the State school tax, and any other sources; calculated upon the basis of the revenue of former years, and these items, deducted from the total estimated expenditures, will give proximately the amount required to be raised by county taxation for the support of schools. The County Commissioners, however, in this instance ascertained the amounts which they say are to be derived from the several sources, and until otherwise shown, we will assume their calculations to be correct. They say that the amount to be derived from the one mill State school tax will be $804.20; from the income of the school fund, $875; and from license taxes for the sale of seed cotton, $500; making $2,179.20. The residue of the amount required must be raised by a county tax, not to exceed two and one-half mills on the dollar of assessed-valuation, as limited by the act of 1879.
What is this residue?
The gross sum is estimated by the School Board at $4,-896.22. If there are any "items”1 in their estimate -which are not proper items of expenses for maintaining the schools, it was proper for the County Commissioners to deduct them from the estimate. One of these items is for salary of County Superintendent, $500, and another is for the compensation of the Treasurer of the Board of Instruction. The County -Commissioners very properly struck out these two items, as not being lawfully included in the estimate of expenses for maintaining the public schools, or to be paid out of the monies raised by tax for school purposes. The compensation of county officers should not be paid out of school funds. By the Constitution, the County Superintendent and County Treasurer are county officers, and their compensation, as regulated by law, should be paid *113 out of funds raised for the ordinary purposes of county government, in the same manner as other county charges are paid. The School Board has no lawful right to pay the salary or fees of county officers.
Each county is required by the Constitution to pay its own officers, under such regulation^ as may be prescribed by law. (Art. XVI., sec. 18.)
(Whether paragraph 12, sec. 19 of chap. 1686, laws of 1869, which authorized Boards of Public Instruction to fix the compensation of County Superintendents, is in conflict with sec. 27 of Art. IV., or with sec. 4 of Art. XVI. of the Constitution, is a question not involved in this case, and is therefore not considered.)
Chapter 2085, laws of 1877, makes the County Treasurer the “Treasurer of the School -Funds,” and his compensation is established by the provisions of chapter 1981, laws of 1874, which prohibit him from receiving any other fees or compensation than that allowed by this chapter, to-wit: a certain per cent, upon all monies received and all monies paid out. To pay him an extra amount as “Treasurer of the Board of Public Instruction” is not warranted by law, but is prohibited. In his settlement with the Board of County Commissioners, he will be paid the compensation as fixed by law, out of the proper funds of the county and not from school money.
Deducting from the cstimUte of the School Board the $600 named as salary and compensation of the superintendent and treasurer, leaves the sum of $4,296.22. It is claimed by the respondents that the sum of $1,895.22 is for the payment of past indebtedness of the School Board for hire of teachers and other expenses, represented by outstanding warrants issued by the board during previous years and remaining unpaid, and that because this is not for the expense of maintaining the schools for the current year, it should not be included in the estimate and collected by tax for school purposes. By the revenue laws all school orders are receivable for county school taxes. This $1,-895.22 of school orders, being so receivable for the county schools taxes of the current year, will more than absorb the one and one-quarter mills which the Commissioners have provided, (amounting to only $1,005.25,) and thus instead of raising enough to pay the expenses of maintaining the schools there will be nothing but an old debt remaining, and the schools yet unprovided for. In other words, the sum. which the Commissioners say has been raised for the future, will, according to law, be paid out on account of past due warrants, and the schools cannot, therefore, be maintained during the necessary period of three months of the current year.
In conducting State and municipal affairs, it frequently happens that from causes not anticipated a considerable amount of taxes or other revenue remains uncollected and sometimes not. collectable, and this causes deficiencies in the funds to meet obligations incurred, for which warrants upon the treasury have been drawn. Upon the ascertainment of such deficiency, such warrants being receivable for taxes, unless provision is made for meeting it, the warrants already drawn will inevitably come into the treasury in the payment of taxes levied for the purpose of meeting future necessities, and thus leave the future unprovided fQr. This is a contingency not contemplated by the Legislature in respect to common schools. The law requires that a sufficient sum shall be raised to meet the expenses of maintaining the schools for the year, and this cannot be done unless the deficiencies are first provided for, so that the school revenues may be applied for the purposes contemplated by the law. In no other way can a sum sufficient to maintain the schools be realized.
It was, therefore, necessary either to abandon the schools for the year or to provide for maintaining them. The Constitution, the Legislature, public policy, all require that they shall he maintained.
Provision, therefore, for cancelling this indebtedness (if it be legitimate, which is not questioned here,) was necessary, and it was proper to include it in ascertaining what amount must be raised for maintaining the schools.
The sum of $4,296.22 being found as the sum required to meet past and present emergencies, is in part provided for, as it is now understood, as follows:
The one mill State tax yields. $804.20
Income of the State School Fund. 875.00
Income from licensing sale of seed cotton. 500.00
Thus estimating a revenue of.$2,179.20
The Commissioners have caused a levy to be made of one and one-quarter mills for school purposes, which will bring. 1,005.25
Making in all. $3,184.45 being $1,111.77 less than the amount required, assuming that the foregoing estimates will be fully realized by the County Treasurer.
The motion to quash the return as- insufficient is allowed, except so much thereof as relates to the deduction of six hundred dollars from the itemized estimate of money required for school purposes, and so much thereof as relates to the deduction from the aggregate estimate of the revenues reasonably expected to be derived from the other sources mentioned in said return.
On the third day of April, 1880, the relators entered a motion for a peremptory writ, and notice of such motion having been served on the respondents, and no objection being made, an order was entered for the peremptory writ to issue returnable on the eighth day of April,, and the writ issued accordingly. On the seventh day of April, the respondents moved the court to vacate the order allowing the peremptory writ, on the ground that it required the performance of an illegal act, and was improvidently granted, and on the next day the court granted the motion and quashed the writ, and on the same day the relators moved to amend the alternative writ by striking out such language as. requires the Board of County Commissioners to “assess” the tax and the words “and to deliver the assessment roll to the Collector of Kevenue for Gadsden county,” and to insert in lieu of the last words stricken out, “and that they give notice of such levy to the Assessor of Gadsden county.” The motion to amend was granted, and respondents thereupon filed their return to the alternative writ as amended, showing a substantial compliance with the mandate of the court, and relators not objecting, it was adjudged that respondents had substantially complied witli such mandate, and that the respondents pay the costs, except those of the peremptory writ, the costs of which the relators were ordered to pay.