## KATZENBERGER v. ABERDEEN.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Submitted March 21, 1887. — Decided April 4, 1887.

The act of the legislature of Mississippi of November, 1858, amending the charter of the city of Aberdeen in that state, conferred no power upon the municipality to issue its negotiable bonds in payment of subscription to railroad stock, and to levy a tax for their payment, until the legal voters of the city should approve of the tax by a vote of a majority of such voters at an election held as other elections in the city.

The curative act of the legislature of Mississippi of March 16, 1872, did not legalize bonds issued illegally before the adoption of the new constitution of 1869, which would not be valid if issued after its adoption.

When, by reason of a change in the constitution of a state, its legislature has no constitutional authority to authorize a municipal corporation to issue negotiable bonds, it cannot validate an issue of bonds by such a corporation made before the change in the constitution, and when the legislature had such power.

THIS was an action at law to recover interest on municipal bonds. Judgment for defendant. Plaintiffs sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Calvin Perkins* for plaintiffs in error.

*Mr. Baxter McFarland* and *Mr. E. O. Sykes* for defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit brought against the city of Aberdeen, on the 14th of September, 1882, to recover the interest from May 1, 1874, to May 1, 1882, on 156 bonds of the city issued to the Memphis, Holly Springs, Okolona and Selma Railroad Company, under date of April 26, 1870. The alleged authority for the issue of the bonds is an amendment to the charter of the city in November, 1858, Laws of Mississippi, 1858, p. 221, as follows:

"SEC. 1. *Be it enacted by the Legislature of the State of Mississippi,* That the mayor and selectmen of the city of Aberdeen be, and they are hereby, empowered to contract with the New Orleans, Jackson and Great Northern Railroad Company, or with any other railroad company, and to subscribe in the name, and for the use of the city of Aberdeen, as many shares of the capital stock of said company, and upon such terms and conditions as they may stipulate and agree upon, as they shall deem expedient, not exceeding in amount the sum of one hundred thousand dollars.

"SEC. 2. *Be it further enacted,* That the mayor and selectmen of said city of Aberdeen are hereby empowered to levy and collect a tax on all the property within the corporate limits of said city, subject at the time to state or county tax, and upon the annual gross incomes of all persons or corporations residing or doing business in the corporate limits of said city, to be applied to the payment of the aforesaid subscription of stock as provided in the first section of this act: Provided, That before such tax shall be levied the same shall be approved by a majority of the legal voters of said city, to be ascertained by an election held as other elections in said city.

"SEC. 3. *Be it further enacted,* That the said tax shall be levied and collected as other taxes of said city, and the tax collector is hereby required to execute a bond, with good security, to be approved by the said mayor and selectmen conditioned for faithful performance of his duties as such collector, and that he will pay over the moneys collected, as directed by the said mayor and selectmen, and such tax collector shall receive for his services one per centum on the amount collected, and no more.

"SEC. 4. *Be it further enacted,* That the gross amount of the annual income of each and every person and corporation residing or doing business within the corporate limits of said city, shall be ascertained by the said tax collector, who, for such purposes, is authorized and required to administer an oath to each person, or his agent, or the proper officer of a corporation, as [to] the amount of his, her or their annual income;

and any person wilfully swearing falsely, as to the amount of such income, shall be deemed guilty of perjury, and upon conviction thereof shall be punished as in other cases of perjury.

"Sec. 5. *Be it further enacted,* That this act shall take effect from and after its passage."

On the 26th of April, 1870, the mayor and selectmen of the city passed the following ordinance:

"Sec. 1. *Be it ordained by the mayor and selectmen of the city of Aberdeen, in council assembled,* That the city of Aberdeen do hereby subscribe to the capital stock of the Memphis, Holly Springs, Okolona and Selma R. R. Company the sum of one hundred thousand dollars, to be paid in bonds of the said city of Aberdeen, each of the denomination of five hundred dollars ($500), maturing twenty years from the first day of May, A.D. 1870, bearing eight per cent. interest per annum, payable semiannually on the first days of May and November of each year, said bonds to be signed by the mayor of the city of Aberdeen and countersigned by the treasurer thereof, with the corporate seal of said city affixed.

"Sec. 2. *Be it further ordained,* That the bonds issued in pursuance of section first of this ordinance have interest coupons attached, signed by the treasurer of said city of Aberdeen or with his signature lithographed thereto.

"Sec. 3. *Be it further ordained,* That the form of the bonds of the city of Okolona issued to said railroad company be adopted as the form of the bonds issued to said railroad company by the city of Aberdeen, issued in pursuance of the foregoing ordinances, and that the city attorney be instructed to prepare immediately a form for said bonds and have the same lithographed.

"Sec. 4. *Be it further ordained,* That this subscription is upon condition that said Memphis, Holly Springs, Okolona and Selma Railroad shall pass through the city of Aberdeen, Mississippi, and the amount of said subscription be expended in constructing said railroad in and through the county of Monroe, in said state.

"Sec. 5. *Be it further ordained,* That as soon as said bonds are lithographed and signed, as herein directed, the mayor of

said city shall hand the same over to the Memphis, Holly Springs, Okolona and Selma Railroad Company, and receive therefor the certificate of stock of said company."

Pursuant to this ordinance the stock was subscribed and bonds issued. The bonds were in the usual form of negotiable coupon bonds, and contained the following recital:

"This bond is issued under and pursuant to the constitution and laws of the State of Mississippi, the charter of the city of Aberdeen, and ordinances passed by the mayor and selectmen of the city of Aberdeen on the 26th of April, A.D. 1870."

The declaration states, in substance, the agreement for a subscription, as set forth in the ordinance, to be paid in bonds; the issue of bonds in accordance with this agreement; the purchase by the plaintiffs in March, 1874, of those the interest upon which is sued for, except that the "seven coupons first maturing had at the time of such purchase been detached and paid and were not purchased;" and that none of the coupons for interest had been paid since. There is no averment that the levy of a tax to pay the subscription had ever been approved by the legal voters of the city.

A demurrer to the declaration was sustained by the court below, and a judgment rendered thereon in favor of the city. To reverse that judgment this writ of error was brought.

In our opinion, upon the facts stated in the declaration, the city had no authority to issue the bonds. The amendment of the charter, taken as a whole, shows clearly that the legislature did not intend to allow the city authorities to make a subscription which would bind the tax-payers for its payment by the levy of a tax, until the legal voters had approved of such a tax by a majority vote at an election held as other elections were held. As was said in *Wells* v. *Supervisors*, 102 U. S. 630, the policy of Mississippi, "from its earliest history seems to have been to require municipal organizations to meet their current liabilities by current taxation; and in *Hawkins* v. *Carroll County*, 50 Miss. 735, 762, it was expressly declared that 'the grant of power to such a body of an extraordinary character, such as is not embraced in the general scope of its duties, must be strictly construed.'" In the present case, the mayor

and selectmen had power to contract with the railroad company and to subscribe to its stock on "such terms and conditions as they may stipulate and agree upon;" but there was no express authority to borrow money to meet the payment nor to issue bonds. The authority to agree on "terms and conditions" does not necessarily imply such a power. It more naturally refers to stipulations about the location of the road and the expenditure of the money subscribed of the general character of those which were actually made part of this subscription, namely, that the road should pass through Aberdeen, and that the amount of the subscription should be expended in building it in Monroe County. It could give no power to bind the city to levy a tax to pay the subscription before the tax was voted, because § 2 expressly declares that there shall be no tax without a vote. If voted, the city authorities might probably bind the city for its levy and collection. But if not voted, there was no power to bind the tax-payers in any form for its levy, and that would be the legal effect of a valid negotiable coupon bond given in payment of the subscription, if found in the hands of a *bona fide* holder for value before maturity. If payment could be made without a tax, the mayor and selectmen might subscribe to any extent they deemed expedient. But if the subscription was in any event to be paid by a tax, the tax must be voted before any obligation for its payment could be incurred.

But it is insisted that the city is estopped by the recital in the bonds from denying that they were lawfully issued. The recital is in effect, that they were issued "under and pursuant" to law, the charter of the city, and the ordinance of April 26, 1870. As has been seen, neither the charter nor any other law of the state conferred in express terms power on the city to issue these bonds under any condition of facts. The ordinance of the mayor and selectmen directing their issue is not of itself enough. Legislative authority, express or implied, to pass the ordinance must be shown. The recital, therefore, in its present form, is of matter of law only, because it implies the existence of no special facts affecting the case, except the issue of the bonds under the ordinance to pay

the subscription to the stock without any vote of the electors to be taxed therefor. It is in effect nothing more than a recital that bonds issued under such circumstances were "under and pursuant" to law and the ch rter of the city. Such a recital does not estop the city from asserting the contrary. To hold otherwise would be to invest a municipal corporation with full legislative power and make it superior to the laws by which it was created. *Dixon County* v. *Field*, 111 U. S. 92.

It is next contended that the bonds were legalized by § 4 of a curative act of the legislature of Mississippi, adc pted in 1872, Laws of Mississippi, pp. 313, 314, which is as follows:

"*Be it further enacted*, That all subscriptions to the capital stock of the Selma, Marion and Memphis Railroad Company, made by [any] county, city, or town in this state, which were not made in violation of the constitution of this state, are hereby legalized, ratified and confirmed."

Prior to the passage of this act the name of the Memphis, Holly Springs, Okolona a. d Selma Railroad Company had been changed by statute to the Selma, Marion and Memphis Railroad Company.

Before the subscription was actually made by the city a new constitution of Mississippi went into effect, known as the Constitution of 1869, Art. XII, § 14 of which is as follows:

"The legislature shall not authorize any county, city, or town to become a stockholder in, or to lend its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a special election, or regular election, to be held therein, shall assent thereto."

In *Sykes* v. *Mayor of Columbus*, 55 Mississippi, 115, it was decided at October Term, 1877, in reference to this same curative act, that it did not and could not legalize bonds issued before the adoption of the new constitution that would not be valid if issued after. In the opinion, which was delivered by Chief Justice Simrall, it was said, p. 143: "The act of 1872 is not relied on to waive mere irregularities in the execution of the power — but as conferring *power* by *retrospective* operation. If the bonds are obligatory on the city of Colum-

bus, they become so for the first time by virtue of this statute. The legislature of 1872 could not by relation put itself back to 1869, and exercise power not denied or restricted by the constitution of 1832. The measure of its power was the constitution of December, 1869, and it could not ratify an act previously done, if at the date it professed to do so it could not confer power in the first instance. It could authorize a municipal loan conditionally. In order to ratify and legalize a loan previously made, it was bound by the constitutional limitation of its power." The doctrine of this case was fully assented to by this court in *Grenada County Supervisors* v. *Brogden*, 112 U. S. 271.

The bonds in the present case, when issued, were unauthorized and void, so that the only question is whether the curative statute has made them good. The objection to them is not that they were issued irregularly, but that there was no power to issue them at all. They are to be made good, if at all, not by waiving irregularities in the execution of an old power, but by the creation of a new one. Clearly, therefore, if the legislature had no constitutional authority to grant the new power, a statute passed for that purpose could not have the effect of validating the old bonds. In *Grenada County Supervisors* v. *Brogden* the validating act was sustained, because the subscription was voted by the required two-thirds majority of voters, and, therefore, the constitution of 1869 did not stand in the way of what was done. Here, however, there has been no vote at all.

It is said that in *Sykes* v. *Mayor, &c., of Columbus*, there was no authority to subscribe at all, and, therefore, that case was different from this. But here there was no power to subscribe for payment in bonds; and in principle the two cases are alike. The question is as to the obligation of the taxpayers to pay the subscription by taxation. Under its original authority the city could not and did not create such an obligation. The constitution of the state now prevents the creation of any new liability of that character, unless two-thirds of the qualified voters of the city have agreed to it. That was not done when the bonds were made, and no provision

has been made for getting such an agreement now. The curative act is consequently inoperative so far as this subscription is concerned.

Many other questions were discussed in the argument for the plaintiffs in error, but, as they all grow out of the mistaken idea that the original subscription payable in bonds could have been made under the charter as amended in 1858, they need not be specially referred to. Bonds issued without legislative authority cannot be made binding by me; e municipal ratification, because there is no more power to ratify than there was to create originally.

*The judgment is affirmed.*