Buford, J.
 

 The Board of Public Instruction of Brevard County consolidated certain public free schools resulting in the schools South of Melbourne being abandoned and provision being made for the accommodation of pupils thereof in the schools of Melbourne. There is no attack upon the right of the School Board to consolidate the schools.
 

 On the 8th day of July the Board of Public Instruction adopted a resolution, the pertinent part of which was as follows:
 

 “At one-thirty two members or the local trustees of District No. 4 came before the Board and recommended that the students in all rural schools South of Melbourne be transported to Melbourne. Two petitions were submitted, one for and one against, and
 
 *1430
 
 the question was ably discussed by R. V. Gutermuth.. After due consideration it was voted that this recommendation of the local Trustees be accepted by the School Board and that steps be taken to provide for suitable transportation and such transportation as will be necessary and adequate.”
 

 On the 5th of August the Board of Public Instruction held another meeting and it is alleged that the minutes of the Board show the following action, to-wit:
 

 “About two o’clock in the afternoon a delegation of citizens from the South end of Brevard County headed by Attorney Gus A. Tomlinson of Vero Beach, appeared before the Board and presented a petition containing the names of approximately one hundred and forty persons alleged to reside in that part of Brevard County South of Melbourne. Attorney Tomlinson in presenting said petition, urged the Board to rescind its action of July 8th, which action ordered that the school children in that section of Brevard County South of Melbourne school be transported to the Melbourne Schools. The delegation then retired.
 

 “After due and careful consideration of the arguments offered by the delegation and its attorney, the Board proposed the following resolution:
 

 “Whereas, it is the duty of the County Board of Public Instruction ‘To perform all acts reasonable and necessary' for the promotion of the educational interest of the County;
 

 “And, Whereas, in the judgment of this County Board of Public Instruction, the children residing in the said rural districts South of Melbourne can because of the better equipment and greater number of teachers and better classification of students in
 
 *1431
 
 the larger school system at Melbourne, get better instruction in the Melbourne School than in the said rural schools, it seems ‘Seasonable’ to the Board that these children can be transported to the Melbourne schools, and in order to give them this better type of instruction that can be obtained in the Melbourne School, it is ‘Necessary’ to transport them there.
 

 “Now therefore, be it resolved, That the Board adhere to its action of 'July 8th, which ordered that these students be transported to the Melbourne School.”
 

 Thereafter, the appellants here filed a bill to enjoin the Board of Public Instruction from expending the public school funds of Brevard County for the transportation of school children from the territory lying South of Melbourne to Melbourne to attend the public schools in Melbourne. It is contended that this contemplated expenditure will constitute an unlawful expenditure of public school funds.
 

 On hearing temporary restraining order was denied and from that order appeal was taken.
 

 It is not shown that the Board of Public has made or entered into any contract which would constitute a waste of thé public funds, nor that it is contemplated to pay more for the transportation of the school children from from the districts South of Melbourne to and from the schools in Melbourne than such transportation is reasonably worth.
 

 We believe that it is conceded amongst experienced educators that the consolidation of schools operates for the betterment of educational advantages and gives to the pupils of such schools broader opportunities and the possibility of acquiring a more thorough education than is obtainable under the old system of many small schools accommodating a few pupils each and that, therefore, in'
 
 *1432
 
 the consolidation of schools the respective Boards of Public Instruction are performing that duty which is prescribed by paragraph 11, Section 454, Rev. Gen. Stats., 561 Comp. Gen. Laws.
 

 It appears that the law-makers have contemplated the furnishing of free transportation by the Boards of Public Instruction of the several counties. The Compulsory Attendance Law, Section 684 Comp. Gen. Laws, paragraph 4, is as follows:
 

 “Any child between the ages of seven and nine years, inclusive, who resides more than two miles from any school and any child from ten to sixteen years of age who resides more than three miles from any school unless free transportation is furnished.”
 

 By Section 1280, Comp. Gen. Laws, motor vehicles used for transportation of school children to and from school under contract with school officials are excluded from the payment of license tax required of motor vehicles for hire, Section 1285, Rev. Gen. Stats., excludes from certain provisions of the law motor driven vehicles owned or used by the school .authorities in transporting school children to and from school.
 

 Under the law, school busses have acquired a status peculiar to such vehicles.
 

 It appears to us that the furnishing of transportation for school children from the rural districts who are required to travel several miles to reach the location of a central school involves the expenditure of funds for the maintenance of the public free school and is a proper expenditure to be incurred by the County Board of Public Instruction to be paid from the county school fund as a part of the necessary expense incident to the attendance of the children in school. If the child is to be educated
 
 *1433
 
 in the school, it is necessary to procure its attendance there.
 

 The burden of education as provided in the free schools of the State should fall alike on all tax-payers. Every citizen has a direct interest' in the education of the youth of the community in that education upbuilds and promotes good citizenship and, although a tax-payer may not have contributed a child, or children, to the citizenship of the community, he must contribute to the cause of education which will make for the betterment of the citizenship. This contribution is one to his country and not to the individual who derives some direct and personal benefit from it.
 

 For the reasons stated, the order appealed from should be affirmed and it is so ordered.
 

 Affirmed.
 

 Whitfield, P. J., and Strum, J., concur.
 

 Terrell, C. J., and Ellis and Brown, J. J., concur in the opinion and judgment.