THE BOARD OF PUBLIC INSTRUCTION, Okaloosa County, Florida, *Plaintiff in Error,* v. J. E. KENNEDY, *Defendant in Error.*

147 So. 250.

Opinion filed March 21, 1933

*Purl G. Adams,* for Plaintiff in Error.

*George W. Barrow,* for Defendant in Error.

DAVIS, C. J.—On September 6, 1930, defendant in error, J. E. Kennedy, was employed, by written contract, to transport pupils from Rock Creek to Beaver Creek and Baker High School in Okaloosa County, for which service he was to be paid the sum of $120.00 per school month. On January 12, 1931, the Okaloosa County Board of Public Instruction issued to Kennedy for services that had been rendered by him under the contract during the scholastic year

1930-1931, a writen evidence of indebtedness reading as follows:

"$127.00                                                       No. 1850
                                   "Crestview, Fla., Jan. 12, 1931
*"State of Florida, Okaloosa County*

"The Board of Public Instruction of Okaloosa County, Florida, hereby certify that it is indebted to:

"J. E. Kennedy in the amount of, One Hundred, Twenty-Seven Dollars, which will be paid to the holder of this certificate from the first available funds, together wth interest at eight per centum from·date.

"BOARD OF PUBLIC INSTRUCTION
                     "Okaloosa County, Florida
                                    "By Lula Edge

"Attested, J. T. Carpenter,
"County Superintendent."

The writ of error now before us was taken to a judgment rendered against the Board of Public Instruction of Okaloosa County, allowing a recovery for the principal and interest of the indebtedness by the certificate of indebtedness last mentioned.

The principal defense interposed to the declaration was, in substance, that no recovery at law was authorized, because the indebtedness sued for was an indebtedness that had been incurred by the Board of Public Instruction prior to the current school year in which suit was brought, and that the defendant Board did not have, and would not have, to pay a judgment if rendered, any moneys available out of its then current revenues, above and in excess of the amounts that would be needed by it for the current support and maintenance of the public free schools of Okaloosa County.

Other attempted defenses were that the amount sought to be recovered had not been included in the current school budget; that the evidence of debt issued had unlawfully

attempted to pledge future revenues for current expenses; and that the cause of action sued on was simply an evidence of past due indebtedness that had been executed by the school board without authority of law, to be paid out of future revenues "when available."

The judgment appealed from was entered on demurrers sustained to all of the defendant's pleas, following defendant's refusal to further plead.

In a long series of cases decided by this Court it has been held that school funds authorized by Article XII of the State Constitution have been segregated by organic law from general county funds, and must be raised and expended for the distinct purpose only, of maintenance and support of the public free schools, and that no authority can be given by general or special laws to divert school funds, or any part of them, from the particular objects specified in the Constitution. State ex rel. Bours v. L'Engle, 40 Fla. 392, 24 So. Rep. 539; McKinnon v. State, 70 Fla. 561, 70 So. Rep. 557; Clifton v. State, 76 Fla. 244, 79 So. Rep. 707; Johnson v. Board of Public Instruction, 81 Fla. 503, 88 So. Rep. 308; Leonard v. Franklin, 84 Fla. 402, 93 So. Rep. 688; Warren v. Board of Public Instruction, 86 Fla. 254, 97 So. Rep. 384; Barrow v. Moffett, 95 Fla. 111, 116 So. Rep. 71; State v. Board of Pub. Inst. Indian River County, 98 Fla. 1152, 125 So. Rep. 357; Coppedge v. State, 99 Fla. 358, 127 So. Rep. 319; Board of Pub. Inst. Lafayette County, v. Union School Furnishing Co., 100 Fla. 326, 129 So. Rep. 824; Board of Pub. Inst. Lafayette County v. American Seating Co., 100 Fla. 616, 130 So. Rep. 42; Board of Pub. Inst. of Pinellas County v. Knight & Wall Co., 100 Fla. 1649, 132 So. Rep. 644; Board of Pub. Inst. v. Gerow, Calnan & Davis, 100 Fla. 1657, 132 So. Rep. 647; Board of Pub. Inst. Flagler County v. McKenzie, 103 Fla. 99, 136 So. Rep. 899.

But it has also been held that while public schools are a

sacred trust, and that although the Constitution contemplates the payment of all school indebtedness when and as due, that this does not necessarily mean that an indebtedness *once lawfully incurred* for the support and maintenance of the public free schools, as authorized by law, within the limitations of the Constitution, may not be made lawfully payable at a later date out of the proceeds derived from the authorized tax levy provided to be made for school purposes. Bervaldi v. State ex rel. Gibson, 103 Fla. 902, 138 So. Rep. 380. Nor that *lawful* claims may not be reduced to a judgment at law in a suit brought against the Board of Public Instruction as defendant. First National Bank v. Board of Pub. Inst. Lafayette County, 93 Fla. 182, 11 So. Rep. 521.

A board of public instruction created under the laws of the State of Florida has the right, within the limits of its statutory authority, to contract with teachers and other persons, for the rendition of personal services required to be utilized in and about the operation or maintenance of the public schools, when appropriate to carry out the plan or system provided for by law. And in the event any lawfully made contract for personal services is breached, or the services rendered under it are not paid for as agreed, an action at law therefor will lie against the board, and judgment on the cause of action that has accrued may be rendered against it, as in the case of other public bodies corporate, which may become liable to judgment in an action *ex contractu*. Kelly v. Board of Public Inst., Baker County, 105 Fla. 398, 141 So. 311. For limitations on such suits see Babcock v. Board of Pub. Inst. for Dade County, 104 Fla. 693, 140 So. Rep. 644; First National Bank of Key West v. Board of Pub. Inst. for Dade County, decided at present term.

In Savage v. Board of Public Instruction, 101 Fla. 1362, 133 So. Rep. 341, it was stated that "the Florida Constitu-

tion imposes no limitation upon school boards and school districts becoming indebted for their current expenses within the amount of the current tax levy." And in Bervaldi v. State ex rel. Gibson, 103 Fla. 902, 138 So. Rep. 380, this Court held that "if indebtedness has been legally incurred by a school board which it would be lawful to pay out of a current levy of school taxes, the school board has the right to take such indebtedness into account in making up its budget and to include items of that account in the total amount to be raised for the scholastic year."

The statutes relating to the functioning of boards of public instruction mandatorily require that a detailed estimate shall be made of the expenses expected to be incurred in maintaining and operating the schools for the current year. It is also required that the moneys to be raised for school purposes shall be likewise carefully estimated, such estimate to be made by the Board after taking into consideration any other sources of income expected to be received. Section 561 C. G. L., 454 R. G. S., State ex rel. Board of Pub. Inst. Gadsden County v. County Commissioners, 17 Fla. 418.

The statutes also contemplate that the required annual estimate of expenses for maintaining the schools for the scholastic year shall include provisions to be embraced therein, to cover deficiencies that have been experienced in the receipt or collection of anticipated revenues of previous years, so that all contemplated disbursements of school moneys based on the current budget shall not exceed in the aggregate the sum of money expected to be available, or provided to be raised, to meet the budgeted expenses of maintaining the schools for that scholastic year. This is so because, as was said in State ex rel. Board of Pub. Inst. Gadsden County v. County Commissioners, 17 Fla. 418, it frequently happens that, in conducting school affairs, after budgets of estimated revenues and of estimated expenses have been care-

fully made up, and obligations have been incurred by the Board of Public Instruction on the faith thereof, some of the expected revenues are for various reasons not received, or remain uncollected, thereby causing unexpected deficiencies in funds essential to discharge those obligations which were lawfully and in good faith incurred, with the reasonable assurance and expectation on the part of the Board, that the expenses of the year would be within its reasonable anticipated receipts, and consequently within the purview of the plan of school financing contemplated by the Constitution and the statutes.

Therefore, where statutory budgets of expected revenues and expenses have been made up in due form and in substantial accordance with law, and an indebtedness properly chargeable to the support and maintenance of the public schools has been incurred within the limits of the authority of the Board to anticipate and provide for its payment out of its reasonably expected current revenues, such indebtedness becomes a legal debt of the Board of Public Instruction so incurring it, and if it is not paid out of the school revenues of the year for which incurred, such debt may be reduced to judgment in an action *ex contractu*, as a valid claim against the Board of Public Instruction. And in making up subsequent budgets, such Board of Public Instruction may, and should, take into account such judgments when rendered against the Board on account of claims lawfully incurred and thereafter reduced to judgment by reason of non payment. Bervaldi v. State *ex rel*. Gibson, *supra;* State *ex rel*. Board of Pub. Inst. Gadsden County v. County Commissioners, 17 Fla. 418, *supra*.

In the suit now before us no claim is made in any of the pleas, to which demurrers were sustained, that the item sued for was not within the scope of the budget that was provided for the scholastic year 1930-1931 during which the

services contracted for were rendered. On the contrary, the contention is that although the item of transportation contracted for may have been within the scope of the 1930-1931 budget, and although the services for which payment is claimed to be due have been actually rendered to the Board of Public Instruction of Okaloosa County and have been accepted by that Board and the benefit of same enjoyed in maintaining and operating the public schools of the county during the school year 1930-1931, that because there was not enough money collected to meet the 1930-1931 budget, that the plaintiff is not entitled to recover even upon an admittedly just and lawful claim, because to allow him to recover now would entitle him to participate in revenues provided to be used, and required to be expended, for operating the schools during 1931-1932, or subsequent years.

To so hold would be to adjudge that the State Constitution and our statutes intended a plan of management for the school system's fiscal affairs that in legal effect requires the county school authorities to ignore and repudiate its unpaid just and lawful past debts, valid when made and actually incurred for something of value used and enjoyed in maintaining and operating the schools during a particular year, simply in order to have all revenues received in a subsequent year expended and enjoyed solely and only for the purpose of operating the schools during that year alone. Such is not effect of the constitutional language used, nor is any such intent evidenced by any necessary implication to be drawn from the words of the organic law on the subject of expenditure of school funds. Nor has this Court ever so held.

The provisions of Article XII of the Constitution which limit the "disbursement" of school funds by the County Board of Public Instruction "solely for the support and maintenance of public free schools" (Section 9 of Article

XII as amended at general election 1926) have reference to the "paying out" of school funds for purposes other than to satisfy lawful debts or claims that have arisen in connection with, and for the purpose of, the "support and maintenance" of the public free schools within the limits of the powers conferred upon the County Board of Public Instruction by valid provisions of law. The word "disbursement" is the constitutional word that has been employed by the framers of the Constitution to express the scope of the limitation intended to be made. That word is defined in the dictionaries and by the legal authorities simply as the equivalent of "a paying out, or an expenditure."

So long therefore as a disbursement, i. e. "a paying out, or expenditure" of school funds is done "solely" for the support and maintenance of public schools, whether for past support and maintenance remaining unpaid, or for current support and maintenance of such public free schools, the intent of the Constitution is not violated, in cases where the payment is made for an obligation that was valid when incurred by the County Board of Public Instruction.

Obligations heretofore recognized as being legally payable for the support and maintenance of the public schools may be said to embrace in general: (1) current liabilities for salaries of teachers and others legitimately employed to carry on, operate and maintain the schools; (2) current liabilities for supplies and ordinary equipment, repairs, fuel, and the like used or consumed in operating and maintaining the schools; (3) unpaid evidences of indebtedness representing moneys borrowed pursuant to statutory authority providing for the borrowing of money in anticipation of revenue collections reasonably expected to be realized or received at a later date; (4) the amount of any proportionate annual installment authorized by statute to be paid toward defraying the cost of *permanent* school facilities, lands, build-

ings or equipment as may be considered properly chargeable in proportionate parts against the funds of each· scholastic year for which same is to be used; (5) unpaid valid debts carried over as unpaid from the revenues of previous years, because of unexpected deficiencies in such revenues that were provided for in the budget but not received; (6) interest on·any item of school indebtedness lawfully required to be paid, when payment of such interest is specially stipulated in the terms of a lawfully authorized contract, or is provided for by statute; (7) judgments rendered as to items not unlawful to be paid for by disbursements from the county school funds.

The indebtedness sued for in the present case was, according to the fourth count of plaintiff's declaration, an indebtedness that arose because of an unpaid claim for $127, due the plaintiff for services rendered and performed by him in discharging his contract with the Board of Public Instruction of Okaloosa County for transportation of school children to and from certain designated county schools, during the scholastic year 1930-1931. It was apparently to furnish *evidence* of the amount that had been actually earned under the transportation contract, that the Board gave to its contractor the subsequent written evidence of such indebtedness dated January 12, 1931, by which it acknowledged itself to be indebted to him in the sum of $127.00, and agreed to pay same with interest thereon, out of its first available funds.

In Malounek v. Highfill, 100 Fla. 1428, 131 So. Rep. 313, this Court held that furnishing of transportation for school children from rural districts to central schools was a proper expenditure or "disbursement" chargeable against the county school fund. Consequently the county's agreement in this case for the employment of the plaintiff to furnish transportation of school children during the designated

scholastic year therein mentioned was for a lawful purpose, and the services provided for having been rendered by the plaintiff, and accepted by the County Board of Public Instruction which has given plaintiff a written acknowledgment of satisfactory performance of the contract as stated, gave rise to a right of action against the school board which became enforceable in a suit at law brought to adjudicate the amount and validity of the claim, in order that it might be later collected in like manner as other adjudicated claims are collected against bodies corporate created to discharge public functions and authorized to sue and be sued with respect to its lawfully created debts, though limited to a specific revenue which must be looked to for the double purpose of meeting current expenses as well as paying any judgments recovered with respect to valid transactions of the past.

The proper amount to be sequestered out of any one year's school revenue to be applied on the payment of judgments is a matter that may be dealt with in any appropriate proceedings brought by the judgment creditor to coerce payment of his judgment after it is rendered against the County Board of Public Instruction. In any such proceedings due regard must be had by the Court for the preservation and use of a reasonable amount of the available current revenues for continuing the maintenance and operation of the schools in the interest of carrying out the intent of the law for a program of uninterrupted education, and at the same time provide for the ultimate discharge of the public school debt as a matter of preserving the public credit and satisfying a legal as well as moral obligation required to be satisfied.

In the judgment rendered in the present case there was included interest on the item of $127.00 sued on. The allowance of interest prior to judgment, on an ordinary un-

paid school claim of the character here dealt with, can only be justified when specially provided for by statute (Duval County v. Charleston Engineering & Con. Co., 101 Fla. 341, 134 So. Rep. 509) ; or where the contract at its inception had included in it an authorized stipulation agreeing to pay interest on deferred payments required to be made under the contract. No such stipulation appeared in the contract sued on, nor was an agreement to pay interest authorized to be made by the school board after the service had been completely rendered and the contract fully executed, since there was no valid consideration for any such an undertaking.

The judgment appealed from should be affirmed, but on condition, however, that defendant in error shall, within ten days after the filing of the mandate in the Court below, enter a remittitur of all interest on the principal of the claim sued on, that was computed and included in the judgment to cover any period of time prior to the date of the entry of the final judgment to which this writ of error was taken, otherwise the judgment should stand reversed and the cause remanded for further proceedings according to law.

Affirmed on condition of remittitur.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.