## FIDELITY LIFE ASS'N v. BOARD OF PUBLIC INSTRUCTION FOR MARTIN COUNTY, STATE OF FLORIDA.

### No. 2137.

District Court, S. D. Florida.
March 20, 1935.

Carroll Dunscombe and T. T. Oughterson, both of Stuart, Fla., for plaintiff.

Smith & Kanner, of Stuart, Fla., for defendant.

RITTER, District Judge.

The plaintiff brings this action upon certain bonds issued by the defendant as of date September 1, 1927, under and pursuant to chapter 13072, Special Acts of 1927, Laws of Florida. Each bond recites as is provided by the said act: "This bond is one of an issue of fifty bonds of like date, amount and tenor, except as to the maturities thereof, aggregating $50,000.00, and is issued for the purpose of raising funds to pay an outstanding floating indebtedness of said Board of Public Instruction of Martin County, Florida, incurred for the support and operation of the public free schools of said County, evidenced by warrants, notes and open accounts, under the authority of and in full compliance with the act aforesaid."

The defendant demurs to the declaration on the ground that the said bonds are void because the special act of the Legislature aforesaid is unconstitutional, being in violation of sections 8 and 9, article 12 of the Constitution of Florida, in that there was no power under said sections for the Legislature to authorize the defendant to issue these bonds, and consequently the defendant had no power to issue the same.

Section 17 of said article 12 provides that the Legislature may provide for Special Tax School Districts to issue bonds for the exclusive use of public free schools within such Special Tax School District whenever the majority of the qualified electors thereof, who are freeholders, shall vote in favor of the issuance of such bonds. There was no election held in reference to the bonds now under consideration.

Section 8 of article 6 and section 8 of article 12 provide for the assessment to raise the school fund.

The defendant was organized under Comp. Gen. Laws Florida 1927, being Title 5, Education (section 493 et seq.), and there was in force at the time of the act and bond issue a statutory restriction upon the defendant under its organization, being section 566 of the Comp. Gen. Laws Florida 1927, entitled, "County School Board Authorized to Borrow Money," which grants permission to borrow whenever there is no money in the school fund applicable to the payment of outstanding school warrants in any one year, 80 per cent. "of the amount as estimated by them to be required for the maintenance of the necessary common schools of their county for the next ensuing scholastic year," and specifically provided "that no school board shall after July 1, 1915, incur debts of any nature in excess of the estimated amount."

It appears upon the face of these bonds, and from the act aforesaid, that they were issued to pay a past indebtedness, which was in excess of the 80 per cent. as allowed aforesaid. Previous to the issuance of these bonds, there had been a series of decisions by the Supreme Court of the State of Florida in reference to the construction of the public school provision of the Constitution and statutes indicating prohibitions and

limitations. State ex rel. Bours v. L'Engle, 40 Fla. 392, 24 So. 539; Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; Pennock v. State, 61 Fla. 383, 54 So. 1004; McKinnon v. State, 70 Fla. 561, 70 So. 557, L. R. A. 1916D, 90; Clifton v. State, 76 Fla. 244, 79 So. 707; Langford v. Odom, 77 Fla. 282, 81 So. 469; Johnson v. Board of Public Inst., 81 Fla. 503, 88 So. 308; Leonard v. Franklin, 84 Fla. 402, 93 So. 688; Warren v. Board of Public Instruction, 86 Fla. 254, 97 So. 384.

■ Both the school district and the purchaser of the bonds must be chargeable with the knowledge of the law as then existing.

The case of Barrow v. Moffett, 95 Fla. 111, 116 So. 71, was decided by the Supreme Court of the State of Florida on February 1, 1928. The case was pending in the Supreme Court when these bonds were issued, involving their validity. The said court holds in that case: "The Constitution contemplates the payment when due of expenses for maintenance and support of schools, and does not contemplate the issue of bonds to pay for past indebtedness."

The Constitution and statutory law of the state provide the method by which the indebtedness of a school board could be paid out of current expenses, said indebtedness to be taken into account in the levying of the permitted tax. Board of Public Instruction for Okaloosa County v. Kennedy, 109 Fla. 153, 147 So. 250.

At the same session of the Legislature, where the act in question was passed, there were also similar acts passed in reference to Highland County and Broward County School Districts.

In the Barrow v. Moffett Case, supra, the court dealt with the Highland County Act (Acts Fla. 1927, c. 12844).

The recitals in the bonds and the act are the same in the instant case. Subsequent to that decision, the Supreme Court of Florida has had occasion to consider the question and has consistently supported its decision in the Barrow v. Moffett Case, 95 Fla. 111, 116 So. 71.

In the case of Board of Public Instruction for Lafayette County v. Union School Furnishing Co., 100 Fla. 326, 129 So. 824, 826, it says:

"It is too elementary, however, to require any citation of authority that the Legislature could not by its attempted enactment make valid and binding an obligation of the county board of public instruction which it could not by its enactment authorize such board of public instruction to incur and execute. * * *

"The framers of the Constitution protected the school fund in so far as it was reasonably possible to do so, and when contractors and vendors deal with a board of public instruction they know, or should know, that the authority of the board is limited and that it is not authorized to pledge its expected revenues for future years for the payment of current obligations. Therefore, when such contractors or vendors deliberately enter into a contract or agreement by which the future revenues of the board are attempted to be pledged for the payment of current expenses, they do so at their peril, and they know, or should know, that they have neither moral nor legal right to expect such obligations to be paid from funds to be raised in the future, which funds are provided for the current maintenance of the public free schools and for the benefit of and for the use of those who are entitled to receive the benefits of the school during the annual period for the maintenance of which the fund is collected."

In State v. Board of Public Instruction for Indian River County, 98 Fla. 1152, 125 So. 357, it is said: "Section 9, article 12, Constitution, as amended in 1926, specifies the sources from which the county school fund shall be derived. The Constitution contemplates an annual budget of county school expenditures, and does not contemplate that interest-bearing time warrants or bonds shall be issued and sold to raise county school funds 'for the support and maintenance of public free schools.'" State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; Bervaldi v. State, 103 Fla. 902, 138 So. 380; Board of Public Instruction v. Kennedy, 109 Fla. 153, 147 So. 250.

"When the law confers no authority to issue the bonds in question, the mere fact of their issue cannot bind the town to pay them, even to a purchaser before maturity and for value. * * * A county board of public instruction in this state may only assume such obligations as it is authorized by statute to assume, and then only pursuant to the method prescribed by statute." Babcock, Inc., v. Board of Public Instruction, 104 Fla. 693, 140 So. 644, 645. See Board of Public Instruction for Flagler County v. McKenzie, 103 Fla. 39, 136 So. 899.

The Florida Supreme Court has consistently held to the doctrine of Barrow v. Moffett, 95 Fla. 111, 116 So. 71.

 Counsel suggest that this court is not bound by the decisions of the Supreme Court of Florida, and particularly the case of Barrow v. Moffett, supra, for the reason that in matters of general law, the federal courts exercise independent judgment. This is undoubtedly true, but the federal courts in passing on the constitutionality of state statutes follow the decisions of the state court of last resort as to the purposes of the statute and will only determine whether the statute as so construed is in conflict with the Federal Constitution. Acquiescence in the construction of the state legislative enactments is applied to state constitutional provisions. The exception to this rule is where a question is raised as to whether the state law has impaired the obligation of contracts. 6 R. C. L. 85.

"For the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt." Trainor Company v. Ætna Casualty Co., 290 U. S. 47, 54 S. Ct. 1, 2, 78 L. Ed. 162.

The federal courts usually follow the construction placed by the Supreme Court of a state on its constitutional provisions. Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Sim v. Edenborn, 242 U. S. 131, 37 S. Ct. 36, 61 L. Ed. 199; Fox River Co. v. R. R. Comm., 274 U. S. 651, 47 S. Ct. 669, 71 L. Ed. 1279; Brinkerhoff-Faris Co. v. Hill, 281 U. S. 673, 50 S. Ct. 451, 74 L. Ed. 1107; Barnum v. Town of Okolona, 148 U. S. 393, 13 S. Ct. 638, 37 L. Ed. 495; Board of Liquidation v. Louisiana, 179 U. S. 622, 21 S. Ct. 263, 45 L. Ed. 347.

In Sauer v. New York, 206 U. S. 536, 27 S. Ct. 686, 689, 51 L. Ed. 1176, in reference to the interpretation of laws by the state court, it is said that the federal court ought "not to be insensibly tempted beyond them by the thought that an unjustified or harsh rule of law may have been applied by the state courts in the determination of a question committed exclusively to their care."

The rule of federal courts, however, is in conformity with the rule of the state court in Barrow v. Moffett, supra, where there is no power granted to issue the bonds. Thomas v. City of Richmond, 12 Wall. 349, 20 L. Ed. 453; Katzenberger v. Aberdeen, 121 U. S. 172, 7 S. Ct. 947, 30 L. Ed. 911; Geer v. School District No. 11 (C. C. A.) 111 F. 682; Litchfield v. Ballou, 114 U. S. 190, 5 S. Ct. 820, 29 L. Ed. 132.

It is said that Judge Akerman has rendered judgment on similar bonds in cases before him thereby upholding the validity of these bonds. I do not know just what the facts presented to Judge Akerman were and I respect his opinion, but nevertheless I must give what I think is the law in the instant case.

I notice that Judge Strum was a member of the Supreme Court of the State of Florida when the decision in the Barrow v. Moffett Case was rendered and concurred in the opinion and judgment and likewise in the subsequent cases of Board of Public Instruction for Lafayette County v. Union School Furnishing Co., 100 Fla. 326, 129 So. 824; Board of Public Instruction for Lafayette County v. American Seating Company, 100 Fla. 616, 130 So. 42; and Board of Public Instruction for Pinellas County v. Knight & Wall Co., 100 Fla. 1649, 132 So. 644.

 I decided in the case of Turner v. Board of Public Instruction of Broward County,[1] involving exactly similar bonds and facts as presented in the instant case, that the act of the Legislature was unconstitutional and the bonds were void, and I am still of the same opinion. I concur in the reasoning of the Supreme Court of Florida. It was the intention undoubtedly of the makers of the Constitution that the public free schools of the state of Florida should be kept in funds for current expenses. The statute aforesaid is in aid of such intent. This was the only way to keep them open, prevent extravagances, and protect the taxpayers, and the statute aforesaid safeguards the spending of the money so that conditions would never arise as here confront us. If the school board could proceed to spend more than the estimated income from the funds gathered under the method prescribed by law, without reference to any limitation and thus exceed the annual income and then issue bonds to meet the indebtedness, thus created, there will be no limit to what the school board could spend. It will do indirectly what it cannot do directly. Otherwise, a situation would be created, as in this case, where the bondholders seeking a judgment on their bonds

---

[1] No opinion filed, directed verdict.

would be able under the doctrine of "first come, first served," to compel the payment of their bonds out of the funds of the school board arising from the current year assessment and collections and thus deplete the amount necessary to keep open the schools for any year. This is clearly contrary to the very purpose of the constitutional provision.

The Supreme Court of Florida has hit this situation by its decisions. I am constrained to say in this case, as the court said in Trainor Co. v. Aetna Casualty Co., 290 U. S. 47, 55, 54 S. Ct. 1, 3, 78 L. Ed. 162: "In the present case, it would not be going far enough to say merely that the question is 'balanced with doubt,' for it seems to us that the Pennsylvania decisions, and those of the other states cited above, are plainly right."

So I say in this case as to the Florida decisions.

The demurrer filed as to the three counts setting out different bonds is sustained. The fourth count appears to be an attempt to set up a common-law count of money had and received, but it specifies the bonds in question and I consider it to be, in fact, the same as the other counts. It is evidently based upon the same issue as raised in the other counts, and its claim for money had and received cannot disguise its purpose and intent, and I therefore hold the demurrer is sustained as to the fourth count.

Unless the parties can show why this case should be further retained, on the docket, the same will be dismissed.