555 So.2d 1211 (1990)
BROWARD COUNTY, Petitioner,
v.
Keith FINLAYSON, et al., Respondents.
No. 73475.
Supreme Court of Florida.
January 25, 1990.
*1212 John C. Copelan, Jr., County Atty., Broward County, Fort Lauderdale, and James C. Crosland and Gordon D. Rogers of Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Miami, for petitioner.
Paul R. Regensdorf and Stuart A. Rosenfeldt of Fleming, O'Bryan & Fleming, Fort Lauderdale, for respondents.
OVERTON, Justice.
We have for review Broward County v. Finlayson, 533 So.2d 817 (Fla. 4th DCA 1988), in which the Fourth District Court of Appeal held that an affected class of county employees claiming back pay was entitled to recover prejudgment interest from Broward County. In its opinion, the district court noted a possible conflict with the Third District Court of Appeal's decision in Sigman v. City of Miami, 500 So.2d 693 (Fla. 3d DCA 1987). We find conflict and have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons discussed below, we approve the district court's decision but find that prejudgment interest on the amount recovered should start accruing on June 17, 1980, the date the first claim for back pay was made.
The relevant facts reflect that Finlayson brought a class action on behalf of herself and other emergency medical technicians (EMTs), employees of Broward County, seeking overtime pay. The EMTs worked twenty-four hours on duty followed by forty-eight hours off duty, averaging fifty-six hours per week. The county's civil service rules, written for all employees, set forth what constituted overtime. The county subsequently entered an administrative order which stated, in pertinent part: "Overtime is work beyond the normal hours of any scheduled work week. After forty (40) hours actually worked, employee will be paid at the rate of time and one-half." In 1979 and 1980, the EMTs bargained collectively for their regular compensation on the basis of a fifty-six-hour workweek and a reduction in the average hours worked per week. On March 11, 1980, the EMTs entered into a contract with the county, which provided for a regular workweek of fifty-six hours, overtime for those hours worked in excess of their scheduled shifts, and a future reduction in the regular workweek to fifty-three hours. This contract was made retroactive to October 1, 1979. On June 17, 1980, three months after the contract was entered into, Finlayson filed a grievance with the county, seeking overtime pay, straight time pay, sick leave credit, and annual leave credit for time worked in excess of forty hours per week from 1973 to September 30, 1979. This was the first time the county received notice of the EMTs' claim for overtime. Broward County administration denied the grievance, stating that it was not timely filed. Following the county's denial, Finlayson, on behalf of herself and the other EMTs, filed a notice of administrative appeal with the Fourth District Court of Appeal. She also filed a complaint in the circuit court. After filing this complaint, she voluntarily dismissed the administrative appeal. Because of the statute of limitations, the pay period for the claimed loss of overtime was reduced to the period between July 16, 1978, and September 30, 1979. The trial court initially granted a summary judgment in favor of the county; however, on appeal, the district court reversed, holding that the EMTs were entitled to proceed on their claim for overtime for those hours worked in excess of a forty-hour-week. Finlayson v. Broward County, 471 So.2d 67 (Fla. 4th DCA 1985). On remand, the parties agreed that the matter would proceed before the jury on the following special verdict question:

*1213 Did the annual salary received by each member of the Class constitute payment for forty (40) hours per week or fifty-six (56) hours, on average, per week?
The county argued that the EMTs had an annual pay agreement for which they were to work a normal fifty-six-hour week and any hours worked in excess of fifty-six hours would constitute overtime. On the other hand, the EMTs contended that they were entitled to overtime for that time worked between forty and fifty-six hours each week. The jury found that the EMTs' annual salary was payment for only forty hours per week. As a result, a judgment was entered providing that each class member was owed retroactive overtime at time-and-one-half the normal rate for sixteen hours per week for the applicable fourteen and one-half-month period. The amount of the judgment entered against the county was for $740,151.65 in back pay overtime wages, $534,739.74 in prejudgment interest commencing at the time the wages accrued, and $241,233.71 in attorney's fees.
On appeal, the district court affirmed, addressing only the prejudgment interest question. Relying on Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla. 1984), the court held that sovereign immunity does not apply in a breach-of-contract action. It concluded that "fundamental fairness suggests that where the sovereign is liable for a debt because of a wrongful act, it is not improper to award prejudgment interest." 533 So.2d at 818. The district court did not expressly address when that interest should commence.
Although numerous issues were raised, we choose to address only the prejudgment interest issue. First, we address the claim that sovereign immunity prohibits an award of prejudgment interest against a subdivision of the state in a contract dispute. In Pan-Am Tobacco Corp., we stated:
[W]here the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.
471 So.2d at 5. We find that the principle set forth in Pan-Am controls and that Broward County is not protected by sovereign immunity in its contract with the EMTs.
The next question concerns whether Broward County should be required to pay prejudgment interest in these circumstances and, if so, whether the amount should date back to when the wages accrued or to when the first claim was made. In Kissimmee Utility Authority v. Better Plastics, Inc., 526 So.2d 46 (Fla. 1988), we reaffirmed our decision in Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985), and stated the general rule concerning the payment of prejudgment interest: "[O]nce damages are liquidated, prejudgment interest is considered an element of those damages as a matter of law, and the plaintiff is to be made whole from the date of the loss." 526 So.2d at 47. See also Florida Steel Corp. v. Adaptable Devs. Inc., 503 So.2d 1232 (Fla. 1986). This general rule is not absolute. In Flack v. Graham, 461 So.2d 82 (Fla. 1984), we refused to permit recovery of any prejudgment interest, stating: "`[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.'" Id. at 84 (quoting Board of Commissioners v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)). We did not recede from this principle in Argonaut Insurance or Kissimmee Utility Authority. Further, in Ball v. Public Health Trust, 491 So.2d 608 (Fla. 3d DCA 1986), the Third District Court of Appeal allowed prejudgment interest but restricted the date it commenced to the date of demand or the commencement of the lawsuit, whichever occurred first. The district court did so on equitable grounds, relying on our decision in First State Bank v. Singletary, 124 Fla. 770, 169 So. 407 (1936). As noted by these decisions, the law is not absolute and may depend on equitable considerations.
*1214 In the instant case, we hold that it would be unfair to permit the EMTs to recover interest for that period of time in which they addressed their compensation on an annual pay basis of a fifty-six-hour workweek rather than on the basis of their entitlement to overtime. The county engaged in good faith collective bargaining with the EMTs concerning the work schedule, which both parties viewed as unique among county employees. Until June 17, 1980, the county was never aware that the EMTs believed they were entitled to sixteen hours' of overtime a week. Given the circumstances in this cause, we find that it would be inequitable to allow the recovery of prejudgment interest prior to the time of the first claim for overtime pay.
Accordingly, we find that Finlayson is entitled to prejudgment interest, but that interest should be calculated from June 17, 1980, the date of the first demand for overtime compensation. We approve in part and quash in part the district court's decision, disapprove Sigman to the extent that it conflicts with the holding in this case, and direct the district court to remand this cause to the trial court for a calculation of the judgment in accordance with this opinion. We also find that Board of Public Instruction v. Kennedy, 109 Fla. 153, 147 So. 250 (1933), is factually distinguishable from the instant case.
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
The assessment of interest against the state or its governmental entities should be the exception rather than the rule. We have long held that under the doctrine of sovereign immunity the state is not liable for interest on its debts unless a statute or a contract calls for it. As stated in Board of Public Instruction v. Kennedy, 109 Fla. 153, 163-64, 147 So. 250, 254 (1933):
The allowance of interest prior to judgment, on an ordinary unpaid school claim of the character here dealt with, can only be justified when specially provided for by statute (Duval County v. Charleston Engineering & Con. Co., 101 Fla. 341, 134 So.Rep. 509); or where the contract at its inception had included in it an authorized stipulation agreeing to pay interest on deferred payments required to be made under the contract. No such stipulation appeared in the contract sued on, nor was an agreement to pay interest authorized to be made by the school board after the service had been completely rendered and the contract fully executed, since there was no valid consideration for any such an undertaking.
Kennedy claimed that he was entitled to interest as an indebtedness resulting from providing bus transportation. He lost. A state is not liable for interest on its debts unless authorized by its legislature or pursuant to contract. United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890).
This Court modified the effect of Kennedy somewhat in Treadway v. Terrell, 117 Fla. 838, 158 So. 512 (1935). In Treadway the Court recognized the above-stated restriction on a state's liability for interest, but concluded that the conditions precedent to liability for interest were met when the legislature authorized suits against the state road department for claims arising from authorized road contracts.
[I]t may be assumed that, in authorizing suits against the State Road Department the statute intends that interest may be adjudged against the State in proper cases where it is necessary to do complete justice and to accomplish the purposes of the statute in authorizing suits against the State on any claim arising under contract for work done since June 7, 1923.
Id. at 858, 158 So. at 519 (emphasis in original). The precepts of Treadway were recognized by this Court in Florida Livestock Board v. Gladden, 86 So.2d 812 (Fla. 1956), where past judgment interest was allowed. The Court carefully noted: "The conclusion we here announce is grounded *1215 upon the particular statute which we are called upon to consider in the matter before us." Id. at 812-13. It went on to hold:
Under Article III, Section 22, of the Florida Constitution, F.S.A., the Legislature is empowered to authorize suits against the state or any of its agencies. When suit is authorized against a state agency without limitation as to interest, the authorizing statute may by reasonable intendment be construed to permit the award of interest against the state agency as a legal incident to the judgment even though the payment of interest by the state is not expressly provided by the statute. Where statutory authority to sue a state agency is given, payment of interest on a claim adjudicated under the statute may be impliedly authorized when the nature of the claim and the object designed in permitting such suits against the state or its agency warrant such implication. We are of the view that the implication is warranted in the case before us.
Id. at 813. Thus, before implying a right to interest, one must look at the enabling statute and the nature and circumstances of the claim. Does the enabling statute to sue imply interest? Is the award of interest necessary to do justice?
This is a suit for overtime compensation. It resulted from a legitimate good faith dispute on how the hours and wages of the employees were to be computed. The county thought it had fully paid its employees.
With the exception of the right to sue the state road department (section 337.19, Florida Statutes), I can locate no statutory authorization for suits against the state for breach of employment contracts.[1] This Court afforded such right by case law. Pan American Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla. 1985). Thus, I can find no statutory authority to imply the right for interest on unpaid overtime compensation. We have disallowed interest in tax refund cases because of the absence of statutory authority, Mailman v. Green, 111 So.2d 267 (Fla. 1959), and distinguished Treadway and Florida Livestock. We followed Mailman in State v. Dickinson, 322 So.2d 525 (Fla. 1975). In Flack v. Graham, 461 So.2d 82 (Fla. 1984), we approved the above-stated principles and denied the claim for interest on back salary of one who had been deprived of office by an erroneous election tabulation. We added that it would be inequitable to assess interest against the state, but this addition did not detract from the primary basis, i.e., the lack of statutory authority, expressed or implied.[2]
I therefore conclude that no interest on the unpaid overtime is due. If any is due, however, I agree that it should not run for wages earned prior to the demand for overtime compensation.
NOTES
[1] Under the facts here, § 295.14, Fla. Stat., has no application.
[2] I recognize that Brooks v. School Board, 419 So.2d 659 (Fla. 5th DCA 1982), and Department of Health & Rehabilitative Services v. Boyd, 525 So.2d 432 (Fla. 1st DCA 1988), authorize interest on back pay. I believe these cases were wrongly decided and would disapprove them.