810 So.2d 1061 (2002)
Robert S. CUILLO, Appellant,
v.
Jerry McCOY, individually, and as Personal Representative of the Estate of E. Don McCoy, Appellee.
Nos. 4D00-3031, 4D01-448.
District Court of Appeal of Florida, Fourth District.
March 20, 2002.
Roger Slade of Pathman Lewis, LLP, Miami, for appellant.
Joseph G. Galardi and H. Michael Easley of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.
HAZOURI, J.
Robert Cuillo appeals from a final summary judgment entered against him in favor of Jerry McCoy, individually and as personal representative of the Estate of E. Don McCoy. The McCoys have cross-appealed the award of prejudgment interest.
On September 5, 1985, Toyota of Palm Beach, Inc., purchased McCoy Motors from appellees and the parties executed a Consulting and Covenant Not To Compete Agreement ("Original Agreement") under which each appellee would be paid $80,000 per year for ten years. The Original Agreement provided that the appellees would work for a limited time per year as consultants for Toyota of Palm Beach. It also provided that appellees would not engage in the business of new motor vehicle sales or services within Palm Beach County for ten years. The Original Agreement further provided:

*1062 4. COMPENSATION: As compensation for services to be rendered by Consultant [appellees] hereunder and Consultant's agreement not to compete with TOYOTA OF PALM BEACH, TOYOTA OF PALM BEACH or its assigns agrees to pay each consultant, or in the event of his death, his estate the sum of Eighty Thousand Dollars ($80,000.00) annually for ten (10) years payable beginning one (1) year from the Closing Date and annually thereafter.
The payments were due on September 5 of each year. Paragraph 7 provided:
7. ASSIGNMENT: Consultant [appellees] shall not have the right to assign, encumber or dispose of the right to receive payments hereunder, which payments and the right to receive same are expressly declared to be non-transferable and non-assignable, being based upon the personal services and agreement of Consultant and any attempt of assignment or transfer shall be null and void and without binding effect upon TOYOTA OF PALM BEACH. The assignment of this Agreement by TOYOTA OF PALM BEACH shall not relieve it of its obligations hereunder.
On July 21, 1986, Toyota of Palm Beach sold the dealership to Cuillo and as part of the sale, Cuillo executed the Assignment and Assumption Agreement ("Cuillo Agreement") which provides:
1. TOYOTA OF PALM BEACH, INC., now known as REGENT MOTOR CO., INC. ("Assignor") does hereby transfer and assign to ROBERT S. CUILLO and his assigns ("Assignee") all of its interest in and to that certain Consulting and Non-Competition Agreement (the "Agreement") between Assignor and Jerry McCoy and E. Don McCoy dated September 5, 1985.
2. Assignee does hereby assume all of the obligations of Assignor under the Agreement and agrees to pay all amounts required thereunder when due. Assignee further agrees to indemnify and hold harmless Assignor and all other persons, firms, corporations and associations having liability under the Agreement, including the payment of attorney fees, costs and expenses resulting from a default by Assignee.
3. This Assignment and Assumption Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.
Cuillo made full payments to appellees under that assignment until December 11, 1987. Thereafter, Cuillo sold the dealership to William A. Chamberlain and executed an "Assignment and Assumption Agreement" with him on January 7, 1988. That document provided:
1. TOYOTA OF PALM BEACH, INC. ("Assignor") does hereby transfer and assign to WILLIAM A. CHAMBERLAIN and his assigns ("Assignee") all of its interest in and to that certain Consulting and Non Competition Agreement (the "Agreement") between Assignor and Jerry McCoy and E. Don McCoy dated September 5, 1985, and a copy of which is attached hereto as Exhibit "A", having a balance due of $1,280,000.00.
2. Assignee does hereby assume all of the obligations of Assignor under the Agreement and agrees to pay all amounts required thereunder when due. Assignee further agrees to indemnify and hold harmless Assignor and all other persons, firms, corporations and associations having liability under the Agreement, including the payment of attorney fees, costs and expenses resulting from a default by Assignee.
3. This Assignment and Assumption Agreement shall be binding upon and inure to the benefit of the parties hereto *1063 and their respective successors and assigns.
Chamberlain made full and timely payments to appellees from 1988 through 1990. Beginning in 1991, Chamberlain was having financial difficulties and made the following total payments: (1) 1991 $60,000; (2) 1992$70,000; (3) 1993 $190,000; (4) 1994$80,000; (5) 1995 $120,000; (6) 1996$80,000.
Cuillo was first notified of Chamberlain's default by letter from appellees' counsel on October 28, 1998. The letter advised Cuillo that his assignee had defaulted and that Cuillo was obligated by the assignment to the appellees. He was notified that $200,000 plus prejudgment interest and attorney's fees were due and owing. If the amount owed was not paid, suit would be filed.
Suit was filed on February 26, 1999, with Cuillo the only defendant and appellees seeking damages in the amount of $200,000 plus prejudgment interest. Cuillo filed a Third-Party Complaint against Chamberlain.[1] Both Cuillo and appellees filed their Motions for Summary Judgment. At the summary judgment hearing, Cuillo argued, inter alia, that the appellees' claim was barred by the statute of limitations. On July 31, 2000, the trial court entered Final Summary Judgment in favor of appellees and awarded them $200,000, reserving jurisdiction to award prejudgment interest. Cuillo's Motion for Summary Judgment was denied. Cuillo timely filed his Notice of Appeal on August 24, 2000.
Appellees filed a motion to assess prejudgment interest and a hearing was held on October 10, 2000. Cuillo argued that prejudgment interest should be calculated from the time he was notified of the default and not before. Appellees argued it should be calculated from the date of the last payment in 1996. The trial court awarded prejudgment interest from the date of the notice to Cuillo and entered an Amended Final Summary Judgment with that provision. That judgment was entered on January 22, 2001, and Cuillo filed another Notice of Appeal on February 2, 2001. Appellees filed their cross-appeal on February 8, 2001. We affirm the trial court in all respects.
Cuillo argues that the five-year statute of limitation set forth in section 95.11(2)(b), Florida Statutes (1997), bars the enforcement of this debt because the default occurred more than five years before the suit was filed. He further argues that the statute of limitations was not tolled by partial payments made by Chamberlain. Appellees argue that under section 95.051(1)(f), Florida Statutes, the statute of limitation was tolled by partial payments made by Chamberlain. Section 95.051(1)(f) provides:
(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
. . .
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.

(Emphasis added).
In Chaplin v. Estate of Cooke, 432 So.2d 778 (Fla. 1st DCA 1983), the court stated:
In 1975 the legislature added § 95.051(1)(f) ... This is the only subsection dealing specifically with written instruments and acts which would toll the running of time on written instruments. Under the provisions of § 95.051(1)(f), the only act which would toll the time for the running of the statute of limitations was the payment of any part of the principal or interest, *1064 since any contrary case law was superseded by § 95.051.
Id. at 779.
Cuillo argues that because he did not make the partial payments, the tolling of the statute of limitation for those partial payments did not apply to him. The cases cited in support of that position are cases which were decided prior to the enactment of section 95.05(1)(f) and, therefore, do not apply. The statute itself does not require any particular person or entity to make the partial payment to toll the statute. The original agreement stated that any assignment of the agreement by Toyota of Palm Beach shall not relieve it of its obligations to pay the McCoys under the original agreement. Cuillo's assumption of the original agreement bound him to follow the terms of the original agreement. Therefore, we hold that by application of section 95.01(1)(f), the partial payments made by Chamberlain toll the statute of limitations as a matter of law and the trial court was correct in granting the summary judgment.
On cross-appeal, the McCoys assert the trial judge erred when she determined that prejudgment interest should run from the notice of default to Cuillo. The McCoys contend that the prejudgment interest should run from the date of the default not the date of the notice of default. We disagree.
In Broward County v. Finlayson, 555 So.2d 1211 (Fla.1990), the supreme court held:
In Kissimmee Utility Authority v. Better Plastics, Inc., 526 So.2d 46 (Fla. 1988), we reaffirmed our decision in Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985), and stated the general rule concerning the payment of prejudgment interest: "[O]nce damages are liquidated, prejudgment interest is considered an element of those damages as a matter of law, and the plaintiff is to be made whole from the date of the loss." 526 So.2d at 47. This general rule is not absolute. In Flack v. Graham, 461 So.2d 82 (Fla.1984), we refused to permit recovery of any prejudgment interest, stating: "`[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.'" Id. at 84 (quoting Board of Commissioners v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)).
555 So.2d at 1213 (citation omitted).
In Finlayson, a class action by emergency medical technicians (EMTs) sought overtime pay from Broward County for hours worked above 40 hours per week when pursuant to their contract with Broward County they were required to average 56 hours per week. The EMTs sought overtime for the period from 1973 until 1979. They gave notice to Broward County of the claim in 1980 and that was the first notice Broward County received. Upon awarding overtime from 1978 to 1979 (the period left within the statute of limitations), the trial court awarded prejudgment interest from 1978. The supreme court remanded for calculation of interest from the date of notice to Broward County because it was inequitable to award prejudgment interest before there was notice and Broward County was unaware of the discrepancy.
At the hearing for prejudgment interest, the trial court concluded that it would be inequitable under all the circumstances of the case to award prejudgment interest before Cuillo had notice of the default. The trial judge did not abuse her discretion in finding that prejudgment interest should run from the date Cuillo received *1065 notice of the default by Chamberlain and not the date of the default.
AFFIRMED.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] Chamberlain is not a party to this appeal.